## JORDAN v. FREDERICK LEYLAND & CO., Limited.

(District Court, E. D. Louisiana, New Orleans Division. July 22, 1925.)

No. 17682.

I. Admiralty ⊛20—No cause of action under Workmen's Compensation Act for injuries to stevedore loading ship.

There can be no cause of action, under Louisiana Workmen's Compensation Act, for injuries suffered by stevedore while loading ship in navigable waters, at least in the absence of waiver or estoppel created by specific agreement between employer and employee to be bound by state act; the matter being wholly within admiralty jurisdiction.

2. Pleading ⊛228—Petitioner's allegations to be taken as true on exception of no cause of action.

Petitioner's allegations are to be taken as true, so far as well pleaded on exception of no cause of action.

3. Pleading ⊛8(9)—General allegations of substitution by defendant of Workmen's Compensation Act in lieu of general maritime law held to be but allegations of conclusions.

In suit for injuries under Louisiana Workmen's Compensation Act, sustained by plaintiff while loading a vessel in navigable waters of the Mississippi, general allegations of substitution by defendant of Workmen's Compensation Act, in lieu of its rights and obligations under the general maritime law, held to be but allegations of conclusions.

4. Admiralty ⊛20—Allegations that defendant held out to plaintiff protection of the Workmen's Compensation Act held not to show an agreement previous to injury fixing act as measure of rights of parties.

In suit for injuries under Louisiana Workmen's Compensation Act, sustained by plaintiff while loading a vessel in navigable waters of the Mississippi, allegations that defendant held out to plaintiff protection of the act without stating in what way and when, held insufficient to show a specific agreement previous to the injury fixing the act as measure of rights and obligations of the parties.

5. Admiralty ⊛20—Allegations held not to show that plaintiff, before injury, agreed with defendant specifically that the Compensation Act should be measure of any future injuries.

In suit for injuries under Louisiana Workmen's Compensation Act, sustained by plaintiff while loading a vessel in the navigable waters of the Mississippi, allegations held not to show that plaintiff was expressly required to waive, or did by express agreement waive, his rights under Civ. Code La. art. 2315, before or after the injury, and that he, before the injury, agreed with defendant specifically that the Compensation Act should be the measure of any future injuries.

6. Master and servant ⊛351—Louisiana Compensation Law optional, to be applied only as result of agreement.

Louisiana Workmen's Compensation Act is theoretically optional with the parties, and is to be applied only as the result of an express or implied agreement resulting from failure to particularly exclude in writing the employment from operation of the law.

7. Admiralty ⊛20—That employer might post notices and do other things required by Workmen's Compensation Act held insufficient to constitute a holding out to all its employees of its obligations under the act.

In suit for injuries under Louisiana Workmen's Compensation Act, sustained by stevedore while loading a vessel in navigable waters of the Mississippi, that defendant might post notices and do other things required by the act was insufficient to construe its actions as a holding out to all its employees of its obligations thereunder, since such acts were properly applicable to those employees governable by the act.

8. Admiralty ⊛20—Defendant not shown to have complied with Workmen's Compensation Act because paying plaintiff compensation for injuries provided thereby.

In suit for injuries under Louisiana Workmen's Compensation Act, sustained by plain-

tiff while loading a vessel in navigable waters of the Mississippi, that defendant paid plaintiff $18 for 17 weeks *held* not to show that defendant was complying with the act to the exclusion of the general maritime law, though amount paid was maximum provided therefor.

**9. Admiralty ☞20 — Form of agreement between employer and employee to adopt a state law as measure of their rights, to be enforceable, must depend on facts in each case.**

Form of a specific agreement between an employer and employee to adopt a state law to exclusion of general maritime law as measure of their rights and obligations, to be enforceable, must depend upon the facts in each case.

**10. Admiralty ☞20—Agreement between employer and employee to adopt state law as measure of their rights and obligations need not be in writing.**

While agreement between an employer and an employee to adopt a state law as measure of their rights and obligations, to be enforceable to the exclusion of general maritime law, must be specific and need not be in writing, if implied, agreement must be clearly shown to exist as a specific agreement applicable to and binding on the parties in interest, and there must be specific facts showing it.

**11. Admiralty ☞20—Allegations held not to show such specific agreement to substitute Workmen's Compensation Act as would deprive defendant of benefit of general maritime law.**

In suit for injuries under Louisiana Workmen's Compensation Act, sustained by plaintiff while loading a vessel in navigable waters of the Mississippi, allegations *held* not to show a specific agreement to substitute Workmen's Compensation Act as would deprive defendant of the benefit of the general maritime law, to which it would otherwise be entitled as the measure of its rights and obligation in any court in which it might be sued.

At Law. Action by Benjamin Jordan against Frederick Leyland & Co., Limited. On defendant's exceptions. Exception of no cause of action sustained, and petition dismissed, if plaintiff does not amend within 10 days.

F. S. Normann, of New Orleans, La., for plaintiff.

Henry P. Dart, Jr., of New Orleans, La., for defendant.

BEATTIE, District Judge. This is an action at law by the plaintiff against the defendant for $7,200, less a credit of $306.

I assume jurisdiction is based upon the fact that the plaintiff is a citizen of Louisiana and the defendant is a foreign corporation.

The action is based specifically upón the Louisiana Workmen's Compensation Act (Act No. 20 of 1914).

The injury suffered is alleged to have been accidental, and is alleged to have been suffered by plaintiff during the course of his employment by defendant as a stevedore to assist in loading cotton on the steamship Mercia, lying in the navigable waters of the Mississippi river, and the injury is alleged to have occurred while the plaintiff was engaged in his work in the hold of the steamship.

Plaintiff further avers that but for certain acts of waiver and estoppel alleged by him, the work in which he was engaged "would be construed as maritime in its nature, that his employment would be construed as a maritime contract, and that the injuries received would likewise be construed maritime, and the rights and liabilities of petitioner would come clearly within the maritime jurisdiction; but petitioner avers that defendant has substituted, in lieu of the general maritime law, the provisions of the Louisiana Workmen's Compensation Law, and has therefore waived its rights, and is now estopped to assert its rights, obligations, and liabilities under the general maritime law." There are other allegations of estoppel and waiver in the petition.

The defendant filed an exception to the jurisdiction of the court, and also an exception of no cause of action.

These exceptions were argued before I assumed the duties of judge, and I understand were either overruled or referred to the merits, to be passed upon on the trial of the merits of the case, and as a result the defendant filed an answer. After I assumed my duties, the exceptions were reopened and argued, and they are now the subject of this opinion.

[1] Under the decisions of Southern Pac. Co. v. Jensen, 244 U. S. 205, 37 S. Ct. 524, 61 L. Ed. 1086, L. R. A. 1918C, 451, Ann. Cas. 1917E, 900, Knickerbocker Ice Co. v. Stewart, 253 U. S. 149, 40 S. Ct. 438, 64 L. Ed. 834, 11 A. L. R. 1145, Washington v. Dawson & Co., 264 U. S. 219, 44 S. Ct. 302, 68 L. Ed. 646, it is clear that there is no cause of action against defendant, unless, by some waiver or estoppel, the defendant is prohibited from taking advantage of the general law as it is held to be by these decisions.

In So. Pac. Co. v. Jensen, page 217, 37 S. Ct. 529, the court said: "The work of a stevedore in which the deceased was engaging is maritime in its nature; his employment was a maritime contract; the injuries which he received were likewise maritime; and the rights and liabilities of the parties

in connection therewith were matters clearly within the admiralty jurisdiction."

On page 216 (37 S. Ct. 529) the court said: "And plainly, we think, no such legislation [New York Workmen's Compensation Act] is valid if it contravenes the essential purpose expressed by an act of Congress or works material prejudice to the characteristic features of the general maritime law or interferes with the proper harmony and uniformity of that law in its international and interstate relations. This limitation, at the least, is essential to the effective operation of the fundamental purposes for which such law was incorporated into our national laws by the Constitution itself."

This decision was rendered under a writ of error to the state court of New York.

Thereafter Congress amended the federal statute relating to the jurisdiction of the District Court, so as to save to claimants in admiralty causes the rights and remedies under the Workmen's Compensation Law of any state. This act of Congress was declared unconstitutional in Knickerbocker Ice Co. v. Stewart, supra, on the principles enunciated in Southern Pac. Co. v. Jensen, supra.

Thereafter Congress adopted another amendment to the Judicial Code (Comp. St. Ann. Supp. 1923, §§ 991, 1233), further attempting to make applicable to admiralty the Workmen's Compensation Laws of the different states, and this last act of Congress was declared unconstitutional in the case of Washington v. Dawson, supra.

The plaintiff in this case has attempted to show that he is not within the rules laid down by the decisions above cited, because, as he alleges, the Louisiana Workmen's Compensation Law has been adopted by the defendant.

In my opinion nothing short of a direct specific agreement, binding upon the plaintiff and the defendant, could take the plaintiff's case out of the positive rules laid down by the Supreme Court in the cases above cited. I have even some doubt as to whether a specific agreement on this subject, in view of the Supreme Court decisions, could be enforceable in a case like this. However, I do not now decide this, as such a case has not been presented, and it may be that a specific agreement between an employer and an employee, to adopt a state law as the measure of their liabilities and obligations and rights, may be enforceable, even though it "contravenes the essential purposes expressed by an act of Congress, or works material prejudice to the characteristic fea-

tures of the general maritime law, or interferes with the proper harmony and uniformity of that law in its international and interstate relations."

In Washington v. Dawson, 264 U. S. at page 228, 44 S. Ct. 305, the court said: "This cause presents a situation where there was no attempt to prescribe general rules. On the contrary, the manifest purpose was to permit any state to alter the maritime law and thereby introduce conflicting requirements. To prevent this result the Constitution adopted the law of the sea as the measure of maritime rights and obligations. The confusion and difficulty, if vessels were compelled to comply with the local statutes at every port, are not difficult to see. Of course, some within the states may prefer local rules; but the Union was formed with the very definite design of freeing maritime commerce from intolerable restrictions incident to such control. The subject is national. Local interests must yield to the common welfare. The Constitution is supreme."

The Supreme Court has applied, in certain cases involving employment on navigable waters, or in connection therewith, the Workmen's Compensation Laws, but the nature of the employment in these cases was different from that of the plaintiff in the case at bar, which comes within the category stated in Southern Pacific Co. v. Jensen, wherein the court said that the work was maritime in its nature; the employment was a maritime contract; the injuries were maritime; and the rights and liabilities of the parties in connection therewith were matters clearly within the admiralty jurisdiction. The cases now referred to are Grant Smith-Porter Co. v. Rohde, 257 U. S. 469, 42 S. Ct. 157, 66 L. Ed. 321, 25 A. L. R. 1008, and State Industrial Commission v. Nordenholt Co., 259 U. S. 263, 42 S. Ct. 473, 66 L. Ed. 933, 25 A. L. R. 1013.

In Grant Smith-Porter Co. v. Rohde, the proceeding was in admiralty, to recover damages for personal injuries to an employee who was injured while at work on a partially completed vessel lying at a dock in the Willamette river belonging to the Grant Smith-Porter Ship Company. On page 476 (42 S. Ct. 158) the court said: "The injury was suffered within a state whose positive enactment prescribed an exclusive remedy therefor. And as both parties had accepted and proceeded under the statute by making payments to the industrial accident fund it cannot properly be said that they consciously contracted with each other in contemplation of the general system of mari-

time law. * * * Under such circumstances regulation of the rights, obligations and consequent liabilities of the parties, as between themselves, by a local rule would not necessarily work material prejudice to any characteristic feature of the general maritime law, or interfere with the proper harmony or uniformity of that law in its international or interstate relations."

On Page 477 (42 S. Ct. 158) the court said: "This conclusion accords with Southern Pacific Co. v. Jensen, 244 U. S. 205 [37 S. Ct. 524, 61 L. Ed. 1086, L. R. A. 1918C, 451, Ann. Cas. 1917E, 900]; Chelentis v. Luckenbach S. S. Co., 247 U. S. 372 [38 S. Ct. 501, 62 L. Ed. 1171]; Union Fish Co. v. Erickson, 248 U. S. 308 [39 S. Ct. 112, 63 L. Ed. 261]; and Knickerbocker Ice Co. v. Stewart, 253 U. S. 149 [40 S. Ct. 438, 64 L. Ed. 834, 11 A. L. R. 1145]. In each of them the employment or contract was maritime in nature and the rights and liabilities of the parties were prescribed by general rules of maritime law essential to its proper harmony and uniformity. Here the parties contracted with reference to the state statute; their rights and liabilities had no direct relation to navigation, and the application of the local law cannot materially affect any rules of the sea whose uniformity is essential."

This case was excepted from the rule in Southern Pacific Co. v. Jensen and other cases cited, because the employment was not maritime; that is, was not aboard of a completed vessel engaged in commerce, but was aboard a vessel in course of construction. For this reason the court held that the parties had not consciously contracted with each other in contemplation of the general system of maritime law, and that therefore the local law was applicable, as it would work no material prejudice to the general maritime law, and could not "materially affect any rules of the sea whose uniformity is essential." By this it is clearly shown that the local law cannot be permitted to apply, because it would materially affect the rules of the sea whose uniformity is essential, in cases of employment (as in the Southern Pacific and other cases) aboard ship engaged in commerce.

The conclusion in this case cited is that the general admiralty jurisdiction extends to a proceeding to recover damages resulting from a tort committed on a vessel in process of construction and lying on navigable waters within a state, but, because the parties had legally contracted with reference to the Oregon Workmen's Compensation

Act, and the employment was on an unfinished vessel, this act would apply and abrogate the right to recover damages in an admiralty court which would otherwise exist.

In Industrial Commission v. Nordenholt Co., supra, the certiorari was to the Supreme Court of New York to review a decision based upon the Workmen's Compensation Law. The injury was accidental in the course of employment as a longshoreman unloading a vessel lying in navigable waters, but the employment at the time of injury was not upon the vessel. The syllabus is:

"When an employee, while working on board a vessel lying in navigable waters, sustains personal injuries there and seeks damages from his employer, *the liability of the employer must be determined under the maritime law.* [Italics mine.] * * *

"But where the injuries occur while the employee is engaged in unloading the vessel on land the local law has always been applied. * * *

"A longshoreman was injured on a dock (an extension of the land) while engaged about the unloading of a vessel lying in navigable waters in New York, and died as a result of his injuries. Held, that his contract of employment did not contemplate any dominant federal rule concerning his employer's liability in damages; and that whether awards under the state Compensation Act are to be regarded as made upon implied agreement of employer and employee, or otherwise, the act was applicable to the case, since this would not conflict with any federal statute or work material prejudice to any characteristic feature of the general maritime law."

The basis of this decision, as distinguished from Southern Pacific Co. v. Jensen and other similar cases, was that the employee was not on board of a vessel engaged in commerce, and therefore his contract of employment did not contemplate any dominant federal rule concerning his employer's liability in damages, such as would control if the employee had been injured on board a vessel engaged in commerce.

The decision of the New York court was reversed because of the failure of the New York court to make a distinction between one working on board of a vessel in navigable waters and there injured, and one injured on land while unloading the vessel, and the court said at page 272 (42 S. Ct. 474): "In the former situation the liability of employer must be determined under the maritime law; in the latter, no general mari-

time rule prescribes the liability, and the local law has always been applied. The liability of the employer for damages on account of injuries received on shipboard by an employee under a maritime contract is matter within the admiralty jurisdiction; but not so when the accident occurs on land."

On page 274 (42 S. Ct. 475) the court said: "In Union Fish Co. v. Erickson, 248 U. S. 308 [39 S. Ct. 117, 63 L. Ed. 261], it was held that when entering into maritime contracts the parties contemplate the system of maritime law, and its well known rules control their rights and liabilities to the exclusion of state statutes."

On page 275, 42 S. Ct. 475, referring to Grant Smith-Porter Co. v. Rohde, supra, where the employee was engaged on a vessel in course of construction, the court said: "Neither the general employment contracted for nor the workman's activities at the time had any direct relation to navigation or commerce."

Again on page 275 (42 S. Ct. 475) the court said: "Insana was injured upon the dock, an extension of the land (Cleveland Terminal & Valley R. Co. v. Cleveland S. S. Co., 208 U. S. 316 [28 S. Ct. 414, 52 L. Ed. 508, 13 Ann. Cas. 1215]), and certainly prior to the Workmen's Compensation Act the employer's liability for damages would have depended upon the common law and the state statutes. Consequently, when the Compensation Act superseded other state laws touching the liability in question, it did not come in conflict with any superior maritime law. And this is true whether awards under the act are made as upon implied agreements or otherwise. The stevedore's contract of employment did not contemplate any dominant federal rule concerning the master's liability for personal injuries received on land. In Jensen's Case, rights and liabilities were definitely fixed by maritime rules, whose uniformity was essential. With these the local law came into conflict. Here no such antagonism exists. There is no pertinent federal statute; and application of the local law will not work material prejudice to any characteristic feature of the general maritime law."

It will be noted above that the court held the Compensation Act applicable to injuries on land, saying: "And this is true whether awards under the act are made as upon implied agreements or otherwise."

As stated above, it is clear and beyond question that the defendant in the case at bar, wherein the plaintiff was injured on a vessel engaged in commerce, cannot be held liable under the Louisiana Workmen's Compensation Act, unless it has become liable by reason of some waiver or estoppel, and, I do not think that liability can be created by any waiver and estoppel short of a specific agreement in advance to adopt that act as the measure of the parties' rights and obligations.

[2] Petitioner's allegations on this subject (which must be taken as true, so far as he well pleads facts as distinguished from conclusions) are:

In article IX: "But petitioner avers the defendant has substituted, in lieu of the general maritime law, the provisions of the Louisiana Workmen's Compensation Law, and has therefore waived its rights, and is now estopped to assert its rights, obligations, and liabilities under the general maritime law." This, it will be noted, is nothing but a conclusion and not an allegation of any facts justifying a conclusion.

In article X: The Louisiana Workmen's Compensation Act "has been substituted by the defendant in lieu of its rights, obligations, and liabilities under the general maritime law." This is but a conclusion.

In article XI: That defendant, "at the time of petitioner's injuries and subsequent thereto held out to your petitioner the protection afforded under the Louisiana Workmen's Compensation Act; that the defendant complied with the Louisiana Workmen's Compensation Act in all of its particulars quoad injured employees; that the defendant *impliedly and tacitly agreed* to compensate your petitioner under the provisions of the Workmen's Compensation Act, and did compensate your petitioner in accordance therewith; and your petitioner, in accordance with the said act, and as required and agreed to by the defendant, waived his rights under article 2315 of the Civil Code of Louisiana, and agreed with the defendant to accept the provisions of the Louisiana Workmen's Compensation Act covering the injuries sustained." (Italics mine.)

In article XII: "Defendant paid your petitioner seventeen weeks' compensation on the basis of $18 per week, in accordance with the provisions of the Louisiana Workmen's Compensation Act."

In article XIII: "It was within the rights of the defendant to impose upon itself a liability different from that prescribed by the maritime law, and that, when defendant obligated itself to petitioner, in accordance with the provisions of the Louisiana Workmen's Compensation Law, adopted and held out to your petitioner the protection afford-

ed by the said Louisiana Workmen's Compensation Act, the defendant is now estopped from asserting a different liability."

In article XIV is a general allegation that in the port of New Orleans the Louisiana Workmen's Compensation Act has been generally adopted, not only by defendant, but all persons operating under the general maritime laws, and that the Compensation Act has been substituted generally in New Orleans for Civil Code, art. 2315, as the prevailing statute governing court actions wherein damages are sought of an employer for accidental injuries.

[3] The general allegations of the substitution by the defendant of the Workmen's Compensation Act in lieu of its rights and obligations under the general maritime law are but allegations of conclusions.

[4] The allegation that the defendant held out to petitioner the protection of the Workmen's Compensation Act, without stating in what way and when—whether before or after the accident—is insufficient to show a specific agreement, particularly when it is coupled in the same article with the allegation that the defendant *impliedly and tacitly* *agreed* to compensate the plaintiff under the provisions of that law, and did compensate him in accordance therewith. This shows no agreement previous to the injury fixing the Louisiana act as the measure of the rights and obligations of the parties.

[5] It is true that petitioner alleges, in article XI, that in accordance with said act, and as required and agreed to by the defendant, he waived his rights under article 2315 of the Louisiana Civil Code, and agreed with the defendant to accept the provisions of the Louisiana Workmen's Compensation Law, but I do not understand by this allegation that petitioner means to assert that he was expressly required to waive or did by express agreement waive his rights under the Code before or after the injury, and that he, before the injury, agreed with the defendant specifically that the Compensation Act should be the measure of any future injuries. This is my conclusion, particularly in view of the allegation just previously made that the defendant impliedly and tacitly agreed to compensate the plaintiff under the provisions of the Compensation Act.

So, too, with the allegations in article XIII. They are rather conclusions than facts, and, taken in connection with the other allegations showing only an implied and tacit agreement, I do not understand that there was any special agreement, either before or after the injury, by which the defendant contracted to obligate itself to petitioner in accordance with the provisions of the Compensation Law, or by which the defendant actually adopted and held out to plaintiff the protection afforded by that law.

[6] The Compensation Laws—at least some of them, and particularly that in Louisiana—are theoretically optional with the parties, and are to be applied only as the result of an express agreement or an implied agreement, resulting from the failure to particularly exclude in writing the employment from the operation of the law, but this option, particularly on the part of the employer, is more theoretical than actual, because the taking away by the law, from the employer, of certain defenses otherwise available to him in case of an action against him by an employee, if he fails to adopt and agree to the provisions of the Compensation Law, practically forces on him the acceptance of the law.

Such an implied agreement (i. e., the one arising under the law from a failure to exclude the employment from its operation) as to the operation of the laws involved in the Southern Pac. Co., Knickerbocker Ice Co., and Washington Cases, supra, if this implied agreement existed with respect to those laws, was not considered by the Supreme Court as sufficient in those cases to justify the enforcement of those laws to the prejudice of the general maritime law and the essential uniformity required thereby. If such an implied agreement was not there sufficient, I think that nothing short of a specific agreement would suffice to make the law applicable. As such an implied agreement is not sufficient, would even a specific agreement suffice?

In view of the following: That in Washington v. Dawson the court held unconstitutional the act having for its purpose to permit any state to alter the maritime law and introduce conflicting requirements, saying that some within the states may prefer local rules, but that the Union was formed with the very definite design of freeing commerce from intolerable restrictions, and that the subject was national, and that local interests must yield to the common welfare; and that, in Grant Smith-Porter Co. v. Rohde, the court held the local law applicable to a man engaged in work on an unfinished vessel, where both parties had accepted and proceeded upon the Compensation statute, because in such a case the application of the local law could not materially affect any rules of the sea whose uniformity is essential; and that, in Industrial Commis-

sion v. Nordenholt Co., the court held applicable the Compensation Act to an injury of one on dock on the land, saying that this was true whether the awards under the Act were made as upon implied agreements or otherwise; and that in all of these cases the Southern Pacific Co. Case and other similar cases were adhered to, because in the former cases the employment, rights, obligations, etc., were not strictly maritime, while in the latter cases they were, and their uniformity was essential—I have concluded, as stated above, that nothing short of a specific agreement between the parties, prior to the injury, to make the Compensation Law the measure of their respective rights and obligations, will be sufficient to supersede the general requirements of the maritime law, which must be uniform throughout the United States. Nothing short of this specific agreement can be sufficient to allow any local law to work material prejudice to the characteristic features of the general maritime law, or interfere with the proper harmony and uniformity of that law in its international and interstate relations.

I do not understand that the allegations of the petition are intended to show any specific agreement of this kind prior to the injury.

[7] The defendant no doubt has other employees, such as men employed on the docks, which, under the rule in Industrial Commission v. Nordenholt Co., would be controlled by the Workmen's Compensation Act, and the mere fact, therefore, that it may post notices as required by the Compensation Act, and do other things required by that act, would not be sufficient to construe its actions as holding out to all of its employees its obligations under the Compensation Law, since the acts thus done by it are properly applicable to those employees governable by the statute. I say this in view of the allegation by plaintiff that the defendant held out to the plaintiff its obligations under this statute, without stating the manner in which it so held out these obligations.

Though the allegations are rather of conclusions than of facts, I do not understand the plaintiff to intend to allege that the adoption of the law, or the agreements and waivers alleged to have been made, were prior to the injury and by specific agreement.

If the agreements or waivers alleged are intended to refer to any agreements made after the injury, such agreements would be agreements of settlement or compromise, and

under section 17 of the Louisiana Compensation Act would have to be in writing. No written agreement is alleged.

Section 17 provides that the interested parties may settle all matters between themselves, "but all agreements of settlement shall be reduced to writing and shall be substantially in accord with the various provisions of this act, and shall be approved by the court."

[8] I do not think that the mere fact that the defendant paid the plaintiff, as alleged in article XII, $18 for 17 weeks, means, necessarily, that the defendant was complying with this act, though the amount paid was the maximum amount provided by the law. The defendant may have concluded that for plaintiff's injury he should receive some compensation, and may have fixed upon this amount, and may have had in mind the Compensation Law in fixing this amount as being a fair way of compensating the plaintiff. This in itself, after the injury was suffered, could not result in an obligation in favor of the plaintiff to completely change its obligations under the law, to the prejudice of the uniformity of the general maritime law. The defendant may have thought the plaintiff entitled to compensation for a certain period, and may thereafter have found that he had entirely recovered from his injuries and was no longer entitled to anything, and for these reasons stopped the payments voluntarily made.

Such matters are not sufficient to show, after the injury, a substitution of an entirely different obligation from that imposed by the general maritime law otherwise applicable.

[9, 10] While I have expressed the opinion herein that nothing short of a specific agreement between an employer and an employee to adopt a state law as the measure of their rights and obligations may be enforceable in such a case as this, yet I do not mean to define precisely just how this agreement may be made, as each case must depend upon its own facts. While I think the agreement must be specific, it does not have to be in writing. It may not have to be express, but, if implied, it, in my opinion, must be clearly shown to exist as a specific agreement, applicable to and binding upon the parties in interest, and, if implied, there must be specific facts showing it. The mere failure to exclude the employment from the operation of the law, which in the case of nonmaritime employments within the state would indicate an implied contract that the law should control, and the mere posting of

notices or the doing of other things required of the employer by the act, will not suffice, particularly if the doing of these acts may apply to other employees relative to whom the law does control. For this implied contract results from the law only with respect to those employments, mandatorily governed by it.

[11] In the case at bar, I decide only that the allegations, so far as they state facts (as I understand them in the manner above set forth), do not show such a specific agreement as would deprive the defendant of the benefit of the general maritime law, to which it would otherwise be entitled as the measure of its rights and obligations in any court in which it might be sued. If the plaintiff can and wishes to amend his petition so as to show facts evidencing such a specific agreement as I have referred to above, I will permit such an amendment and then determine the issue upon the basis of the new facts alleged.

In the absence of such an amendment within ten days from this date, the defendant's exception of no cause of action is sustained, and the petition is dismissed, at the cost of the plaintiff.