## THE CENTRAL STATES.

### In re STEAMTUG CENTRAL STATES, Inc.

District Court, E. D. New York.
Feb. 26, 1935.

John J. Bennett, Jr., Atty. Gen. of State of New York (Robert P. Beyer, Asst. Atty. Gen., of counsel), for the State of New York.

Foley & Martin, of New York City (Christopher E. Heckman, of New York City, of counsel), for petitioner.

GALSTON, District Judge.

The state of New York, by petition, moves for a modification of the stay contained in the order of this court dated January 17, 1935, so as to permit the state of New York to prosecute an action against the Steamtug Central States, Inc., for reimbursement for expenses incurred in removing the hulk of the steamtug Central States from the waters of the Erie Canal.

On July 17, 1934, the petition of the Steamtug Central States, Inc., was filed in this court pursuant to sections 4283, 4284, and 4285 of the Revised Statutes of the United States (46 USCA §§ 183–185), for the limitation of its liability. It appears that no answer was filed by the state of New York nor has any claim been filed pursuant to the order of December 12, 1934, which contained the following provision: "Ordered, that the defaults of all persons or corporations claiming damages for any and all loss, damage or injury caused by or resulting from the aforesaid alleged accident and not having filed claims as aforesaid be, and the same hereby are noted."

The petitioner, therefore, the state of New York, is without status to make the pending motion. However, assuming that the motion were properly cognizable, the relief sought could not be granted.

The petition in limitation of liability discloses that on November 10, 1933, the Central States with a tow left Troy, N. Y., bound for Buffalo, N. Y.; that on or about November 17, 1933, the tug, while proceeding with its tow through the New York State Barge Canal, came in contact with ice in the canal, which resulted in injuring the tug's hull and opening her seams; and that in consequence the tug sank in the New York State Barge Canal in the vicinity of Clyde, county of Wayne, state of New York.

The petition of the state of New York, citing section 183 of the Canal Law of the State of New York (Consol. Laws N. Y. c. 5), alleges that that act provides that when vessels sink in the waters of the Erie Canal and become a menace to navigation and are not removed by the registered owners upon demand by the state authorities, the state may then, upon due notice of sale in accordance with the provisions of the law, sell the sunken vessel at public auction, apply the proceeds of such sale against the cost of removal, and collect any additional costs from the registered owner of the sunken vessel.

It is then alleged that pursuant to such provisions of the state law, the hulk was sold and the proceeds applied against the cost of removal, and that thereafter demand was made upon the Steamtug Central States, Inc., for the sum of $1,487.88, representing the actual cost of removal less the credit of the sum realized on the sale of the hulk.

The state of New York contends that the United States District Court has no jurisdiction to restrain any action by the state of New York to recover the amount expended in removing the hulk of the vessel above stated, because the sinking of the tug occurred in the waters of the Erie Canal, jurisdiction and control of which is vested exclusively in the state of New York and subject to sole review by the courts of that state.

It is also alleged in the petition of the state of New York that the claim of the

state of New York does not arise out of any matter connected with the operation of the steamtug or the resulting collision, but accrued subsequent thereto by reason of the owner's failing to remove the hulk of the abandoned vessel.

The question of jurisdiction seems to be settled by Perry v. Haines, 191 U. S. 17, 24 S. Ct. 8, 11, 48 L. Ed. 73. It was said in that case: "The Erie canal, though wholly within the state of New York, is a great highway of commerce between ports in different states and foreign countries, and is navigated by vessels which also traverse the waters of Hudson river from the head of navigation to its mouth."

On the right to limitation, U. S. Code, title 46, § 183 (46 USCA § 183), provides: "The liability of the owner of any vessel, for any embezzlement, loss, or destruction, by any person, of any property, goods, or merchandise, shipped or put on board of such vessel, or for any loss, damage, or injury by collision, or for any act, matter, or thing, loss, damage, or forfeiture, done, occasioned, or incurred without the privity, or knowledge of such owner or owners, shall in no case exceed the amount or value of the interest of such owner in such vessel, and her freight then pending. (R. S. § 4283.)"

The language of the foregoing section is very broad indeed and enables the owner to limit his liability under the conditions stated for any loss or damage which may occur, and this must include the. damage resulting to the state of New York in removing the wreck. The right thus to limit is discussed fully in Southern Pacific Co. v. Jensen, 244 U. S. 205, 37 S. Ct. 524, 528, 61 L. Ed. 1086, L. R. A. 1918C, 451, Ann. Cas. 1917E, 900. In the opinion, Mr. Justice McReynolds quotes from The Lottawanna, 21 Wall. 558, 22 L. Ed. 654: "In The Lottawanna, Mr. Justice Bradley, speaking for the court, said: 'That we have a maritime law of our own, operative throughout the United States, cannot be doubted. The general system of maritime law which was familiar to the lawyers and statesmen of the country when the Constitution was adopted was most certainly intended and referred to when it was declared in that instrument that the judicial power of the United States shall extend "to all cases of admiralty and maritime jurisdiction." * * * One thing, however, is unquestionable; the Constitution must have referred to a system of law coexten-

sive with, and operating uniformly in, the whole country. It certainly could not have been the intention to place the rules and limits of maritime law under the disposal and regulation of the several states, as that would have defeated the uniformity and consistency at which the Constitution aimed on all subjects of a commercial character affecting the intercourse of the states with each other or with foreign states.'"

So in the matter at bar the federal statute is paramount to the provisions of section 183 of the Canal Law of the State of New York. See, also, Union Fish Co. v. Erickson, 248 U. S. 308, 39 S. Ct. 112, 63 L. Ed. 261.

In conclusion it need only be added that a wreck is a "vessel" within the meaning of section 183 of title 46, U. S. Code (46 USCA § 183), and that in consequence the owner may file a petition for limitation. The Snug Harbor (D. C.) 46 F.(2d) 143.

Motion is denied. Settle order.